UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHULA VISTA MARINA/RV PARK, LTD,<br><br>Plaintiff,<br><br>v.<br><br>M/Y OYEME, U.S.G. Official No. 514480, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, in rem,<br><br>Defendant. | Case No.: 3:17-cv-2231-L-WVG<br><br>**ORDER GRANTING SECOND EX PARTE APPLICATION FOR APPOINTMENT OF SUBSTITUTE CUSTODIAN AND FOR AUTHORIZATION FOR MOVEMENT OF DEFENDANT VESSEL** |

Pending before the Court is Plaintiff's Second Application for Appointment of Substitute Custodian and for Authorization for Movement of Defendant Vessel[1] ("Application"). For the reasons stated below, the Application is granted.

---

[1] Plaintiff does not actually request to move Defendant; however, the application implies that, if necessary, Plaintiff should be permitted to move Defendant to another slip in the same marina. Accordingly, no other movement is contemplated by this Order.

1

3:17-cv-2231-L-WVG

Defendant is a 60 ft. wooden motor yacht built in 1968, and registered with the United States Coast Guard under Documentation No. 514480. Plaintiff contends it provided wharfage services to Defendant pursuant to the License Agreement dated June 3, 2013. (Verified Compl. Ex. A, *see* docs. no. 1 & 11.) As alleged in the verified complaint, Defendant's ostensible owner James S. Twemlow made regular monthly payments; however, the account eventually fell into arrears. On November 13, 2015, Plaintiff informed Mr. Twemlow that Defendant was flooded with water and not seaworthy. Plaintiff requested Mr. Twemlow to remove Defendant from the marina for repairs, or the License Agreement would be terminated. Approximately a year later, Plaintiff again informed Mr. Twemlow that Defendant was still not seaworthy, but permitted Defendant's tenancy at the marina to continue, with the understanding that Mr. Twemlow would undertake the necessary repairs. As Defendant remained in the same condition, on October 16, 2017, Plaintiff notified Mr. Twemlow that the License Agreement would terminate as of October 21, 2017, and that following that date, if Defendant was not removed, wharfage fees would accrue at the higher transient vessel rate. At the same time, Plaintiff notified Mr. Twemlow that Defendant's account was $1,895.92 in arrears, and demanded payment within 15 days. Mr. Twemlow responded that he was unable to pay the arrears, repair Defendant, or remove it from the marina. Plaintiff claims that as of October 31, 2017, Defendant's account has accrued $3,460.52 in arrears.

On November 1, 2017, Plaintiff commenced this action *in rem* against Defendant, her engines, boilers, tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging. Plaintiff asserted breach of the License Agreement, trespass, and *quantum meruit* claims, and requested Defendant's arrest, declaration of a maritime lien for $3,460.52 plus additional wharfage fees through the date of arrest, interest and costs, Defendant's sale, and ability to credit bid at the sale. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1333(1).

2

3:17-cv-2231-L-WVG

A party providing necessaries to a vessel on the order of its owner or a person authorized by the owner has a maritime lien on the vessel. 46 U.S.C. § 31342. Use of a wharf is a necessary for purposes of maritime liens. *Ex parte Easton,* 95 U.S. 68, 77 (1877); *see also id.* at 73; *The Western Wave,* 77 F.2d 695, 698 (5th Cir. 1935); *see also Farwest Steel Corp. v. Barge Sea-Span 241,* 769 F.2d 620, 623 (9th Cir. 1985), *quoting Equilease Corp. v. M/V Sampson,* 568 F. Supp. 1259, 1263 (E.D. La. 193), *aff'd* 742 F.2d 852 (5th Cir. 1984) (the supplies and services "reasonably needed in the ship's business" give rise to maritime liens).

Plaintiff made a *prima facie* case that it provided wharfage services to Defendant, which gave rise to a maritime lien. Accordingly, the Court has granted Plaintiff's ex parte application to issue a warrant for Defendant's arrest, and ordered the Clerk of the Court to issue the warrant commanding the United States Marshal to take Defendant into custody.

Based in the representations of Plaintiff's General Manager Andrea La Valley, Defendant is unseaworthy and located in a slip in Plaintiff's marina at 550 Marina Parkway, Chula Vista, California (the "Marina"). (Decl. of Andrea La Valley in Support of Second *Ex parte* Application for Appointment of Substitute Custodian and for Authorization for Movement of Defendant Vessel, doc. no. 9-1 ("La Valley Decl.") ¶2.) Although the United States Marshal is ordered to arrest Defendant, Defendant's custody requires the services of one or more keepers, and does not include charges for wharfage and needed for Defendant's safekeeping. (Application at 2.) Plaintiff represents that United States Marshal is unable to perform these services at a price comparable to Plaintiff's. (La Valley Decl. ¶8.)

Accordingly, upon arrest, Plaintiff has offered to assume the responsibility for Defendant's custody and safekeeping in the slip where she is currently located or another suitable slip at the Marina, and act as her substitute custodian until further Order of this Court. (Application at 1; La Valley Decl. ¶¶3 & 9.) Plaintiff promises to provide the necessary services, that it has the expertise and facilities needed to perform them, as well

3

as sufficient insurance to protect it against occurrences of negligence. (La Valley Decl. ¶¶ 3-6.) Plaintiff promises to perform these services at a cost not to exceed prevailing rates of the Port of San Diego. (*Id.* ¶5.e.)

Based on Plaintiff's foregoing representations and promises, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Ex Parte Application is granted.

2. The United States Marshal for the Southern District of California shall be, and is hereby, authorized and directed upon seizure pursuant to the arrest warrant of Defendant, her engines, boilers, tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, to surrender the possession thereof to the Substitute Custodian named herein. Upon such surrender the United States Marshal shall be discharged from his duties and responsibilities for Defendant's safekeeping and held harmless from and against any and all claims whatever arising out of said substituted possession and safekeeping.

3. Plaintiff is hereby appointed Substitute Custodian for Defendant, her engines, boilers, tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, to retain her in its custody for possession and safekeeping. Plaintiff shall provide the expertise, facilities and insurance, and perform all services necessary for Defendant's safekeeping and custody, as represented and promised in the Application and Declaration of Andrea La Valley (docs. no. 9 & 9-1), which are incorporated herein by reference, and as required to comply with this Order.

4. Plaintiff shall release the United States and the United States Marshal from any and all liability and responsibility arising out of the care and custody of Defendant, her engines, boilers, tackle, apparel, furnishings, appurtenances, etc., and all other necessaries thereunto appertaining and belonging, from the time the United States Marshal transfers possession of Defendant to Plaintiff. Furthermore, Plaintiff shall hold harmless and indemnify the United States and the United States Marshal from any and all claims

1 | whatsoever arising out of the Substitute Custodian's possession and safekeeping of
2 | Defendant, her engines, boilers, tackle, apparel, furnishings, appurtenances, etc., and all
3 | other necessaries thereunto appertaining and belonging.

5. Plaintiff's attorney shall forthwith serve a copy of this Order to any and all person(s) believed to be Defendant's owner(s).

**IT IS SO ORDERED.**

Dated: November 14, 2017

_____
Hon. M. James Lorenz
United States District Judge